May I please accord. I would like to, my opening argument, I would like to take ten minutes and then reserve five minutes for rebuttal. And I also welcome you to California, Justice Erickson. I guess you're Judge Erickson, but I welcome you to California from North Dakota. In California, under California law, when we have insurance provisions and they're capable of two reasonable interpretations, the court is not to look at which is more correct or which is a better argument, but if it finds that in looking at the language of the particular provisions that it's capable of two reasonable interpretations, then the policy or the, in this case it would be the writer, is ambiguous. And I know my esteemed colleague is going to get up after I get up and he's going to argue that the writer says certain things and it means that it only applies to a residual disability benefit and then he's going to go through the various provisions of the writer. Can I ask you a basic question about that? Yes. The writer, and I've got a copy of it here, is entitled residual disability benefit. It says writer over it and then it says residual disability. And then it begins by saying this writer is part of this disability insurance policy. Are there two separate, as I understand it, there's a separate residual policy from the permanent policy, correct? Correct. So why doesn't the very language of this writer tell us that it only applies to the residual policy? Put aside the formulas, which I know we'll get to later. But why doesn't the very, the caption in the language just tell us it only applies to the residual policy? Well, the title of the writer is indexed adjustment of prior average monthly net income benefit. And just for the record, that's page 146 of the appellant's excerpt. The residual disability writer is a different writer. Well, I'm looking at the writer that's entitled residual disability proportionate benefit. Do you agree that one doesn't apply? Correct. Okay. So which one, which separate writer, which writer separate from that do you think applies? The indexed adjustment of prior average monthly net income benefit writer. And that's on the excerpt 146. Right. But isn't that part of the same policy? Isn't that also part of the residual benefit policy? It's part of the disability policy altogether. It was purchased as part of the disability, the two disability policies that Dr. Glassman had. And that would, it was a separate, a separate premium was paid for, and it's also part of the total disability policy, which is as shown in this case. The record doesn't reflect this as closely as I can tell, but was there a separate writer available to be purchased that might increase the benefits for permanent disability? Does the record reflect that? In other words, did the insurance company offer a writer for the residual policy and a writer for the permanent policy? The record does not reflect that. We're here on a, after a judgment was granted on a Rule 12b6. I understand. I was trying to find out whether that was somewhere in the record. It's not. It is not in the record. Okay. It's not in the record, but there's a representation in I think one of the briefs where they say that a writer was available. Yeah. That was a representation made in the appellee's brief. But not to the district judge. Correct. Because it was on a 12b6 motion, and there was never, we never had an oral argument on that, and we were really confined to the complaint. The documents that were before the judge on the 12b6 were the various policies, were they not? Correct. Okay. Correct. The index adjustment and writer that is at issue here, first of all, to address a question with regard to the title. Under California law, the titles of a particular section or a particular endorsement, or in this case a particular writer, is not controlling. What's controlling is the actual language used within the writer. And the particular writer has a couple of formulas, but these formulas don't apply in this case for a couple reasons. The first formula appears on the first page, and it's only a two-page writer. The first page of the writer is a definition section. It has five different terms. It defines what the consumer price index is, what a claim anniversary is, what a cost of living adjustment is, what an index month is, and what is an adjusted prior month. The first formula appears in the definition section for adjusted prior month. That does not mean it applies to the entire benefits for which the writer is being used. In fact, because it's used in the definition section and not in the benefit provisions, which is on the second page of the writer, that would indicate that that formula only applies when that term is used. So it doesn't necessarily mean that that formula, under the definition of adjusted prior income, applies to every disability that's used in, that's referred to in the writer. Assuming, now I want to get to the point that I guess the charts get to, and I focused on this same issue. How do you, how would you apply, then, the cost of living adjustment to the permanent benefits? You would just multiply the cost of living adjustment times the permanent benefits? Yes. But is there any, the formula that appears below talks about using it to compute adjusted prior income, which is not part of the permanent policy. Correct. Your position, is that simply an illustration that it was also meant to apply to other things? No. My argument is that that formula that you're referring to would apply when that term is used in the benefits provision. When the term adjusted prior income is used, then that's the formula that they're talking about using. It does not necessarily mean that that applies to each disability that a person is receiving on the policy. It would only apply when that particular term is used. Do you need to help me? The permanent disability policies were for fixed amounts, were they not? Correct. 3,500 and 2,000? Yeah, I think it was, the total benefit was 6,500. 6,500. I think it was 4,000. 4,000 and 2,500. So, and was there a definition in any of those policies of adjusted prior income? Not to my knowledge. So, I guess I still have the question. Your argument is that this cost of living adjustment is going to be used to arrive at an adjustment to something other than adjusted prior income, right? It's going to be a cost of living adjustment to the disability. Okay. But those terms don't appear in the disability policy, adjusted prior income or prior average monthly net income? In the permanent disability policies? Correct. Okay. Correct. If we look at the, and sticking with the definition section of the endorsement or the rider, under the definition of cost of living adjustment, it says the cost of living adjustment for each disability. And I know we made that argument in the briefs. But when it says for each disability, it doesn't define what is meant by each disability. It just says for each disability, which theoretically and in reality applies to a total disability claim. So then if you flip over the page and you go to the second section of the rider, which is the benefit provisions, it says the very first paragraph, on each claim anniversary, we will compute your cost of living adjustment. And it ends with a period. So on each claim anniversary, we will compute, and if you plug in the definition for cost of living adjustment, the cost of living adjustment for each disability. Because that's the definition they have for cost of living adjustment. Then you get down to the subparagraphs under the granting of what that benefit is. And the first subparagraph, which is subparagraph one, it says if you are residually disabled. And so if you're not residually disabled, then that whole subparagraph one doesn't apply, including the second formula that's used. Because they use the term if. And in fact, what's important, it's not only important because they use the term if, but they also use the term residually disabled. So when they're talking about a residual disability, they actually use that term. And they didn't use it when they defined cost of living adjustment, and they did not use it in the overall granting of a benefit. So they're only limiting it, that formula that follows is only limiting it if you are claiming a residual disability. And that's actually consistent with paragraph number two, because paragraph number two says if you are disabled or incur an income loss under the recurrent residual disability or recurrent income loss, which is also referring to a different type of disability than just residual disability. So the term if is a modifier, which basically says if you're not residually disabled, then you don't need to read anything further in paragraph one. Number two, if you don't meet those conditions, you don't have to read any further than paragraph number two. So if you look at this particular rider, and I see I'm past my ten minutes, but if you look at this particular rider, essentially what it says, what it says, and what it actually can be reasonably interpreted by a lay person who receives this is if you're disabled, you get a cost-of-living adjustment. And it says cost-of-living adjustment for each disability. And in Dr. Blassman's case, that's a cost-of-living adjustment for his total disability claim. Do you want to save the balance of your time for rebuttal? I would like to save the balance of my time for rebuttal. Thank you. May it please the Court. My name is Martin Rosen, and I'm representing the appellees, Crown Life Insurance Company and Reassure America Life Insurance Company. I'd like to briefly address two arguments, one, the policy interpretation argument, which was discussed by the appellant, and also the statute of limitations argument.  You have something in red that says a wholly different rider increases this final benefit number. Is that rider? You don't need to put it up. I've got it in front of me. You can put it up if you want. But I want to ask you the same question I asked your opponent. Is there any evidence in the record of that rider? I agree with my opposing counsel. There is no evidence in the record of the rider. Okay. Of the other rider. Of another rider that might be purchased to cover the permanent disability policy. Yes, right. It looks like you represented that in the brief, I think. Did I read that somewhere? I represented it in the brief. But it's not part of the record. Right. It is not. Your Honor, I'd like to go ahead and first address the policy interpretation issue, which was discussed at length by the appellant. What strikes me here, really, is the very short story in 1837 by Hans Christian Andersen, The Emperor's New Clothes, because there something was very obvious, but no one dared to say it. And I think it's important to say it here. This policy is a disability insurance policy. This rider is only two pages long. The insurance company, in three different ways, made very clear it applies to adjusting prior income, which is only applicable in a residual disability context. The very first thing is the title. The title of the rider is Indexed Adjustment of, of what? Of Prior Average Monthly Net Benefit. Your opponent says that, well, it says that on that page. A number of pages later, there's something different. Is this all part of the same rider? It's all part of the same rider. It's two pages. It's at excerpts of Record 146 and 147. The next thing is the rider itself specifically says in one location what it is that is indexed. Your adjusted prior income is calculated by multiplying your prior average monthly net income by the cost of living adjustment. That is the only place in the rider which says what is being adjusted, and it's perfectly clear. It's at page 146 of the excerpts of Record. That's the only place in the language of the rider that tells you what to adjust, and it does say you adjust prior income. However, to avoid any misunderstanding at all, immediately below that, there is one of two equations. The equation which immediately follows that language says prior average monthly net income times cost of living adjustment equals adjusted prior income. So now we have the title of the rider. We have the only sentence anywhere in the rider or the policy that tells what to adjust, and we have the formula which is fully consistent with that. It's hard to imagine what more the insurance company could have done. There are two equations in the policy. Before you go on, I just want to understand where these were placed in the rider, because there are page numbers at the bottom of the exhibits in the ER, and the thing that is entitled residual disability proportionate benefit appears to begin on a page number called 7450. I don't know if that's in it. It looks like it's in the rider. Let me just finish my question. And then the other rider that we're talking about, the index adjustment of prior average monthly benefit, has a 7460 on the bottom. Just tell me how they're placed next to each other. Yes. There is the policy itself. Right. Then there is a rider, which is the residual disability rider. And then if you've purchased a residual disability rider, you can get a COLA benefit, a cost of living adjustment, which will index the residual disability, and that's placed after the residual disability rider. So they're two separate riders. They are. Okay. Thank you. Absolutely. You can't even buy the adjustment unless you have the residual disability rider, because it doesn't apply to anything else. It only applies to prior income. So what you have, Your Honor, we talked about the very first equation, which just says multiply the COLA by your prior income, and you get adjusted prior income. And there's only one other formula in the entire rider. And this is actually in the excerpt of record. It's not in color, and it's not in my commentary here in green and red. But this is at page 147, and it says you adjust the prior income. And when you adjust the prior income, you have a new fraction, and you multiply it by the possible benefit, and you get a new benefit. And the easiest way to see this is just through a simple example. If someone was making $100,000 a year and they became disabled, residually disabled, and they lost $30,000 of income, they'd have a loss of 30 one-hundredths times the benefit. Let's call it $10,000. And they would get a benefit of $3,000. Now suppose we lived back in the 80s and inflation was 10% to make the math easier. The $100,000 prior income would be increased to $110,000, and you'd see the fraction, instead of being 30 over 100, would be 40 over 110, and the benefit would be a little over 3,600. What's critical is nowhere in the rider, nowhere in the policy, nowhere at all, is there any definition, is there any calculation, is there any adjustment mentioned which talks about the final benefit being increased? This isn't just about the definition specifically saying it applies to prior income, which is only applicable in a residual disability case, but there being no language present to allow one to interpret it otherwise. In the permanent disability policy, as I understand it, your prior income plays no, you just purchase a fixed amount. Exactly. It plays no role at all. You're absolutely right. So what you have to do to apply this to a final benefit rider is ignore the title of the rider, ignore the only language in the rider that tells you how it works, and ignore the only formula in the rider that tells you how it works. Let me ask one other question. Yes. Forgive me for just trying to do this physically. Not at all. Physically, is there one policy with various riders? Yes. So there's two permanent disability policies. There's two policies, but you're talking, they're identical. They're identical, and they then have riders giving rise to residual benefits? Yes. Okay. Exactly. The interesting thing, I find, Your Honor, is that the opposing counsel and the appellants say that this should apply to total disability, even though the policy says if you're residually disabled. But I would analogize this to saying if you're on a boat, you could say you could carry a parachute with you, but it doesn't turn the boat into a plane. In other words, say this applies to a total disability policy. You still use the formula. It's irrelevant. Nothing changes. Nothing says adjust the final benefit. All it says is adjust prior income, and prior income is only applicable to a residual disability benefit. I'd also like to address real briefly the statute of limitations argument, because I think it's an independent grounds for affirming the district court judgment. Dr. Glassman says that 24 years ago, he should have gotten an increase because of how he views the way this rider works. And one month later, he didn't. Twenty-four years ago, less two months, he also didn't get the increased benefit. And that happened a third month, 24 years ago as well, and a fourth month. In fact, it's happened for about 300 months, give or take. He says he's only seeking to recover for the period of statute of limitations. How do you respond to that? Oh, absolutely, Your Honor. There's two statutes of limitations here. One is the four-year statute of limitations that applies to all contracts, and the other is what, for ease, I call the contractual statute of limitations, which is what is required in the policy. And under California law, the Hiley case, which is cited in our brief, those two operate independently. So simply being prohibited by one statute of limitations from bringing an action doesn't go ahead and somehow allow you to negate another statute of limitations. As I put it in my brief, to say if I live in Los Angeles, I live in California, it would be wrong to conclude if I don't live in Los Angeles, I don't live in California. Here, just because you satisfied the you he argues, he satisfies the contractual statute of limitations, does not mean that he satisfies the statutory statute of limitations. The citation to Hiley is in the brief, and it was actually by one of your, we call it Sistren, Judge Nora Minella at the time, and she noted that the two run independently. One does not overrule the other, and Ninth Circuit law makes that clear as well. And there's an entire section in the appellee's brief which discusses how the two run independently. So this is a situation in which an insured must bring an action within three years according to the contractual statute of limitations and must bring an action within four years according to the statutory statute of limitations. And I also cite other case law which affirms that these two run independently. The saving grace that the appellant tries to tell the court is that somehow this is a rolling accrual, right? There's two easy answers to that. The first is that the Ninth Circuit in the Wetzel case said there is no rolling accrual, and it overruled another Ninth Circuit case, Nakedo, that said that there was. That is now established in the Ninth Circuit. In the appellant's reply brief, they say, oh, but Wetzel only applies to ERISA cases. That's not true. Wetzel cited to the case of Dillon v. Pension Commissioners, a California Supreme Court case, and Dillon was explicit. It said we must distinguish between the right to a benefit in the first instance and the right to periodic payments over time. So if you're questioning the right to a benefit in the first instance, you have four years on a written contract to bring your case. You can't simply say, well, I claim this right, but I want to just go back four years from now or three years from now because that's what the statute of limitations is. No, the right to the benefit in the first instance is what controls. Dillon is controlling California law on this. Wetzel, the Ninth Circuit, overruled prior law and in court. But let's assume, I mean, let's assume that we agree that the policy can shorten the time period. The language in the policy, I take it you're relying on the proof of claim and notice of claim language in the policy? It's called legal. I think it's the legal. Legal actions must maybe brought, no legal action may be brought three years after the time that written proof of loss is required to be given. Right. And then when you go back to proof of claim, it says written proof of claim must be given within 90 days of, A, the end of each month of disability for which benefits are provided, or B, the date of any other loss. So why does the policy on its face require that the claim be brought within 90, filed, written claim filed within 90 days of the initial loss as opposed to each month of the policy? Well, the first answer, Your Honor, is that with respect to the legal actions provision explicitly, the statute, California statutory law requires every insurance company to put that in its policy. No, and it says that no legal action may be brought three years after three years from the time that written proof of loss is required to be given. Right. And then I go back to the section that talks about written proof of claim, which I think is the same as written proof of loss. It is, Your Honor. And it says that may be brought within 90 days after the end of each month of disability for which the benefits are provided by this policy, or, then there's an or, or the date of any other loss. So if I read the two of those together, doesn't your policy, doesn't the contractual provision in your policy allow claims to be brought within 90 days of any month for which a loss would be? It does, Your Honor. In this case, what we have is a permanent disability. So the company has paid total disability benefits nonstop, month in, month out, for the past 300 months. And there are occasions in which there is a dispute as to whether, I mean, sometimes people get better. That's the nature of the human body. And sometimes there is a dispute if I go out with a very severe cold, maybe I'm out for half a year, let's say, so I will need to give continuing proof of loss. And under this independent statute of limitations, I have three years from, to bring a lawsuit on that. That does not negate the statutory statute. I understand, but you're talking about the contractual one. Yes. And what's wrong with the contractual one is it seems to envision claims brought within 90 days of any month in which benefits are paid. So it seems to me the contractual one doesn't help you. I agree. If you adopt that interpretation, then we would have to rely upon the statutory one. Excuse me. If we agree on this policy interpretation issue, we don't have to really address the statute of limitations. No, not at all, Your Honor. They're completely independent arguments. Agreed. Your Honor, I'm happy to answer additional questions. I have 42 seconds. But that's what I wanted to address you about. I don't think there are any other questions. Thank you very much, Your Honor. Thank you. A couple of quick comments in reply. If counsel needs to bring in a board that has blue highlighting and different terms in the rider, the terms they use as an example, those are not the terms that are used in the rider. That illustrates the ambiguity in the rider. They're trying to create something it doesn't say. And the policy doesn't have examples. It doesn't have an attorney to explain how it's supposed to work. All we have to do is go with what the actual language in the rider is. And those terms are not used. It doesn't say final benefit. It doesn't say current income less current income. It doesn't say those terms. So that illustrates the ambiguity. More importantly, the second argument is that that's the formula that's used in subsection 1, which is qualified with the ifs. So a counsel argument is that that formula doesn't even apply, even assuming they use the right terms. Counsel also says something that's not part of the record, that you can't buy this index adjustment rider without purchasing a residual disability rider. That's not part of the record. That's not part of the complaint. That's not part of what was before the district court. So that's outside the record. Now, with regard to the argument with regard to the limitations period, first of all, the contract says what it says pertaining to the time in which to bring the action. But more importantly, there was never a claim for a cost of living adjustment by Dr. Glassman until July of 2010. That was the first time he claimed to get that benefit. So that is the time for which the claim arose, when he made the claim. There was never a denial of a cost of living adjustment until he made the claim for the cost of living adjustment. So the denial occurred in August of 2010, and he clearly brought that within the statute of limitations. Appellants have limited it to three years before that time, and then on a go-and-forward basis. The other issue is appellant's argument basically said, appellant's argument is basically if we make an error in the cost of living adjustment calculation, then you're limited to you wouldn't have a right. So let's assume for the sake of argument that this panel finds that the rider does apply, and that, you know, appellants say the cost of living adjustment should be, you know, 5%. Appellants say it should be 2%. It goes to the calculation of the benefit. The calculation of the benefit would run each month for which they're entitled to a cost of living adjustment. And in this case and in the complaint, Dr. Glassman alleged that the calculation was incorrect. And so the limitations period would run from the time that the claim was submitted. Can I ask you one thing before your time expires? What were you – what relief were you seeking from us? Are you seeking that we direct the district court to enter judgment in your favor or that we simply say that this is a case that should be tried? Well, we are asserting that the district court was in error. Well, of course, you're the appellant. Right. Let's assume you win, and we have to write the last line of the opinion. What do we say? Well, first of all, at a minimum, it's a case that should be tried. What are the factual disputes? Well, some of the things that have actually been represented by the appellees that are not part of the record, that you only can purchase this with a residual disability rider. What does that relate to, a bad faith claim? Well, no, no, that would relate to – this particular rider, by its term, says you have to pay a separate premium for it. And one of the arguments that appellants made was, well, if you have to pay a separate premium for it, there's nothing in the policy saying that it's only limited if you purchase a residual disability policy. So I think that's a factual issue. I think it's also a factual issue as to whether or not, as the court pointed out, whether or not the – how you would calculate the cost of limited adjustment and what that would be. I think those are all factual issues that are not, you know, not for the court, because we're limited really to the foreclosure. But we would just remand for further proceedings consistent with whatever we – however we interpreted the policy. Correct. But that being said, the interpretation of the rider, the rider itself, unless the panel feels additional extrinsic evidence is necessary, is really a question of law. Well, but that's – I don't want to extend this too long, but that's where you confuse me. On the one hand, you're saying the rider's ambiguous. Right. Which would seem to me to give rise to further proceedings. And on the other hand, you're saying you should win under it. No. What we've always argued in this case is that we were opposing a 12B6 motion, and the trial court should have denied that motion and not granted it at that stage of the litigation. Whether the court could decide that based upon additional evidence, ascertained extrinsic evidence on a summary judgment motion or a trial, that was not an opportunity we represented. Okay. Thank you. The matter is submitted, and that ends our session for today.
judges: Erickson, Paez, Hurwitz